UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MICHAEL UVINO,<br><br>           Defendant. | **OPINION**<br>21-CR-00466 (HG) |

**HECTOR GONZALEZ**, United States District Judge:

I assume the parties' familiarity with the underlying facts, procedural history, and issues in this case, and I refer to those only as necessary for this opinion. On September 25, 2023, I sentenced Michael Uvino after he pled guilty to one count of racketeering, in violation of 18 U.S.C. §§ 1962(c), 1963. ECF No. 535 (Uvino Judgment).[1] As part of his sentence, I ordered Uvino to pay—jointly and severally with his co-defendants convicted of extorting John Doe #1—$280,890 in restitution for losses sustained between 2011 and 2021. *Id.* at 5–8. Uvino appealed that portion of his sentence, arguing that I erred in ordering him to pay restitution in that full amount. The Court of Appeals has remanded this case to me pursuant to the procedures set forth in *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994). The panel asks me to clarify if, when imposing the challenged restitution, I found:

> by a preponderance of the evidence that Uvino knew or reasonably should have known (1) that the victim sustained extortion losses even before [Uvino] joined the conspiracy in 2019; and, if so, (2) that those losses totaled $280,890 between 2011 and 2021.

---

[1] Unless otherwise indicated, citations to Electronic Case Files System ("ECF") refer to the filings on the district court docket, *United States v. Alimena, et al.*, 21-cr-466 (E.D.N.Y.). The Court refers to the pages assigned by ECF.

*United States v. Uvino*, No. 23-7306-cr, 2025 WL 706400, at *3 (2d Cir. Mar. 5, 2025). I write to clarify that I did consider both of those things and found them to be true by a preponderance of the evidence in determining the appropriate amount of restitution to impose as part of Uvino's sentence.

Less than one month before Uvino's sentencing, I found by a preponderance of the evidence that John Doe #1 incurred a "known loss of $280,890." ECF No. 517 at 3 (Restitution Order). Accordingly, I ordered "restitution in the amount of $280,890, to be paid jointly and severally with any co-defendant convicted of extorting John Doe #1." *Id.*

Turning to Uvino's sentencing hearing, before imposing sentence I reviewed with the parties their submissions and those of the Probation Office to ensure that I had all of the relevant materials pertinent to Uvino's sentencing. *See* ECF No. 596 at 2:23–8:23 (Uvino Sentencing Transcript). Critically, I also asked whether either party sought an evidentiary hearing. *Id.* at 8:24–9:3. Both parties answered in the negative. *Id.* Thereafter, the sentencing continued with no mention of restitution until halfway through the proceeding when I asked the government for its position on restitution and it responded:

> Your Honor, the Government agrees with Your Honor's order that the Defendant is responsible for the full amount of restitution with respect to the . . . extortion scheme that Your Honor imposed in this case. As you know, the Government had a different position on what that total amount was, but the Government does agree with Your Honor's order that this Defendant is responsible for whatever that full amount may be.

ECF No. 596 at 33:23–34:6. At that point, the defense did not raise any objections.

The next mention of restitution at the hearing was by defense counsel when he referenced my Restitution Order. *Id.* at 49:1–5. Although he noted that Uvino "became involved" in the extortion conspiracy in November 2019, counsel never challenged the fact of Uvino's awareness of the extent of that conspiracy before he joined it. *Id.* at 49:7–8. Rather, counsel asked me to

2

modify the Restitution Order because Uvino was already subject to a large fine from a prior federal conviction. *Id.* at 49:5–20. Effectively, counsel asked me to afford Uvino leniency based on when he joined the conspiracy, rather than arguing as a legal matter, as he did on appeal, that he was unaware of the extent of the conspiracy before he joined it. *Id*.

That is not surprising because the factual record at the time of sentencing made it clear to me then that Uvino was well aware of the extent of the extortion. In support of its request for restitution related to John Doe #1, the government filed a letter setting out its position on the appropriate amount that I should impose. In that letter, the government highlighted the following conversation between Uvino and his co-defendant Vincent Ricciardo:

> V. RICCIARDO: Oh I know it did not stop. Why would you stop something when you got it coming out?
> UVINO: I mean [John Doe #1] said, no, I have always sent the money. And we said who? He said I was giving it to you, Cuzzin [Domenick Ricciardo].
> V. RICCIARDO: Yeah, when I first came home.
> UVINO: So, I'm sure he continued to send whatever he was sending so. I don't know what the number is but . . .
> V. RICCIARDO: Why would you stop it?
> UVINO: You wouldn't.

ECF No. 500 at 3 (Restitution Letter). In that conversation, Vincent Ricciardo confirmed to Uvino that John Doe #1 had been making extortion payments from the time Ricciardo was released from prison in 2008. That conversation alone shows that Uvino "knew or reasonably should have known" of losses predating his membership in the conspiracy as of 2019. In fact, even though I imposed restitution only for conduct commencing in 2011, the conversation shows that he knew or should have known of losses starting as early as 2008. The government's letter was filed publicly on the docket as the restitution amount would affect all defendants, including Uvino, who were convicted of extorting John Doe # 1. Accordingly, by the time of his

3

sentencing I had no doubt that Uvino was aware that I had considered that conversation in determining the proper restitution amount in his case.[2]

In addition to the tape-recorded conversation, as the panel highlighted in its decision, I was also aware at the time of Uvino's sentencing of his "decades-long tenure and captain rank in the Columbo [*sic*] crime family, his supervisory role (after 2019) in the broader extortion conspiracy, and his personal closeness not only with co-conspirators but also with the union official who was a victim of the conspiracy." *Uvino*, 2025 WL 706400, at *3. All these factors obviously weighed in my finding by a preponderance of the evidence that Uvino knew or reasonably should have known that John Doe #1 sustained losses before Uvino joined the conspiracy in 2019, and that the losses totaled $280,890 between 2011 and 2021.

        */s/ Hector Gonzalez*
        HECTOR GONZALEZ
        United States District Judge

Dated: Brooklyn, New York
      March 7, 2025

---

[2] That Uvino was aware of this recorded conversation, and others captured on wiretap interceptions, is further supported by the fact that he had moved for suppression of the wiretap evidence. ECF No. 376 (Suppression Motion). I denied that motion in its entirety six months before his sentencing. ECF No. 438 (Suppression Order).